# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **RALPH LEAVITT**, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL NO. 1**,<br><br>        Defendant. | Case No. 4:24-cv-01148<br><br>Judge Henry Edward Autrey |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

## I.      INTRODUCTION

On May 20, 2025, the Court granted Preliminary Approval of the Class Action Settlement, as set forth in a Settlement Agreement ("S.A.") between Plaintiff Ralph Leavitt ("Plaintiff") and Defendant International Brotherhood of Electrical Workers Local No. 1 ("Defendant" or "IBEW"). (together the "Parties"). Pursuant to the Court's Order, the Court-appointed Settlement Administrator, Simpluris, disseminated notice to the Settlement Class on July 7, 2025. Formal notice successfully reached 98.38% of the Settlement Class. Importantly, no Settlement Class Member requested exclusion, and no Settlement Class Member filed an objection to the Settlement.

As of September 23, 2025, Simpluris received 394 valid claims, representing a 2.46% claims rate. Of these, 381 Settlement Class Members elected to receive a Pro Rata Cash Payment, which is estimated at approximately $372.15 per claimant. Three Settlement Class Members submitted claims for Unreimbursed Economic Losses totaling $5,601.92, which remain under review. In addition, 185 Settlement Class Members elected to receive two years of three-bureau Credit Monitoring through CyE.[1]

In light of these results, the Settlement meets the requirements of Rule 23(a), Rule 23(b)(3), and Rule 23(e)(2), as well as the traditional factors set forth in *In re Wireless*. Accordingly, the Court should grant final approval of the Settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922 (8th Cir. 2005).

---

[1] Plaintiff previously filed a [Proposed] Order Granting Final Approval of Class Action Settlement as Exhibit E ("Ex. E") to the Settlement Agreement. See Doc. 34-1. Should the Court request it, the Parties are prepared to submit an updated version of the [Proposed] Final Approval Order reflecting current ECF docket citations.

## II.     BACKGROUND

Defendant IBEW is a labor union based in St. Louis, Missouri. Doc. 1 ("Compl."), ¶12. Plaintiff alleged that an unauthorized actor acquired copies of certain files stored on IBEW's servers on March 31, 2024 (i.e., the "Data Incident"). *See* Settlement Agreement ("S.A.") ¶1. The Data Incident allegedly exposed personally identifiable information ("PII") of IBEW's current and former members. *Id*. The types of PII exposed allegedly included names and Social Security numbers. *Id*. Plaintiff Ralph Leavitt is a retired electrician and former member of IBEW. Compl. ¶35. On August 22, 2024, Plaintiff, individually and on behalf of a putative class, filed a class action complaint against IBEW in this Court. S.A. ¶2. Therein, Plaintiff brought claims for negligence, negligence *per se*, breach of implied contract, invasion of privacy, unjust enrichment, breach of fiduciary duty, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, and declaratory judgment. *Id*.

Recognizing the benefits of timely resolution, the Parties began discussing the possibility of a class-wide settlement. *See* Declaration of Cassandra P. Miller in Support of Plaintiff's Motion for Final Approval, ¶2. Then, on December 16, 2024, the Parties jointly moved the Court to stay proceedings and deadlines pending a mediation session on February 21, 2025, with Rodney A. Max of Upchurch Watson White & Max. S.A. ¶3. Over the following weeks, the Parties continued to engage in hard-fought negotiations—wherein the Parties exchanged documents, evaluated and discussed the relevant facts and law, and carefully weighed the risks and uncertainties of continued litigation. *Id*. ¶4. After several weeks of negotiations, the Parties eventually succeeded in reaching an agreement on the core terms of the Settlement on January 20, 2025. *Id*. ¶4.

On May 9, 2025, Plaintiff filed a motion seeking preliminary approval of the Settlement. See Docs. 33–35. The Court granted the motion on May 20, 2025. See Doc. 36. Pursuant to the

2

Court's Order, on July 7, 2025, the Settlement Administrator, Simpluris, disseminated direct notice to the Settlement Class by U.S. Mail. See Declaration of Settlement Administrator Simpluris Inc. ("Simpluris Decl."), attached hereto as **Exhibit 2**, ¶10.

### III. THE SETTLEMENT

#### A. The Settlement Class

The Settlement Class is defined as "All individuals residing in the United States whose PII may have been compromised in the Data Incident that impacted IBEW in March 2024, including all those individuals who received notice of the Data Incident." S.A. ¶46. Simpluris determined that there are 16,014 individuals in the Settlement Class. Simpluris Decl. ¶9.

#### B. Settlement Benefits

The Settlement provides substantial and timely relief to the Settlement Class—including a non-reversionary common fund of $315,000.00 (the "Settlement Fund"). S.A. ¶¶4, 49. The Settlement Fund will be used to provide several forms of relief. *Id*. ¶ 59.

*First*, Settlement Class Members may receive up to $10,000.00 each for "Unreimbursed Economic Losses" arising from the Data Incident (e.g., monetary losses from fraud or identity theft). *Id*. ¶61. *Second*, Settlement Class Members are eligible to receive a "*Pro Rata* Cash Payment." *Id*. Notably, Settlement Class Members can obtain both compensation for Unreimbursed Economic Losses and the *Pro Rata* Cash Payment from the Net Settlement Fund. *Id*. *Third*, Settlement Class Members can receive two-years of three-bureau Credit Monitoring through CyEx. *Id*.

The Settlement Fund will further cover the costs of notice and administration, a service award to the Class Representative, and any attorneys' fees and expenses awarded by the Court. *Id*. ¶59. In addition to these monetary benefits, IBEW has agreed to implement enhanced data security

3

measures, which will be funded separately and independently of the Settlement Fund. *Id.* ¶75.

### C. Settlement Administration & Notice.

Pursuant to the Court's Order, the Settlement Administrator, Simpluris, implemented the notice program. Simpluris Decl. ¶¶6–13. On June 3, 2025, Defendant's counsel provided Simpluris with data files containing the contact information of the Settlement Class. *Id.* ¶8. After removing forty-six duplicative entries, Simpluris confirmed that the Settlement Class consists of 16,014 members. *Id.* ¶9. To improve accuracy, Simpluris also updated addresses through the United States Postal Service's National Change of Address database. *Id.*

On July 7, 2025, Simpluris mailed the Postcard Notice to all Settlement Class Members with valid mailing addresses. *Id.* ¶10. As of September 29, 2025, the United States Postal Service had returned 2,942 notices as undeliverable. Of those, Simpluris was able to re-mail 2,491 notices after conducting skip-trace searches using Accurint, while 451 notices remained undeliverable. *Id.* ¶11. On September 5, 2025, Simpluris also mailed Reminder Postcard Notices to Settlement Class Members who had not responded to the initial notice. *Id.* ¶12.

In addition to mailed notice, Simpluris established the Settlement website, "www.LocalNo1IBEWSettlement.com" on July 7, 2025. *Id.* ¶¶14-15. The website provides Settlement Class Members with access to important dates and deadlines, the Settlement Agreement, the Preliminary Approval Order, and a downloadable version of the Notice of Settlement and Claim Form. *Id.* ¶14. As of September 22, 2025, the website had been visited by 2,029 unique users and generated 5,766 page views. *Id.* ¶14.

Simpluris also launched a toll-free telephone hotline on July 7, 2025, to provide Settlement Class Members with additional information regarding the Settlement. *Id.* ¶15. The hotline is

accessible twenty-four hours per day, seven days per week, and will remain active throughout the administration process. As of September 22, 2025, the hotline had received 131 calls. *Id*.

D.     **Claims**

As of September 23, 2025, Simpluris has received 394 valid and timely claims from Settlement Class Members. *Id*. ¶16. Of these, 381 Settlement Class Members elected to receive a Pro Rata Cash Payment, which is estimated to be approximately $372.15 per claimant. *Id*. ¶17. In addition, 185 Settlement Class Members elected to receive two years of three-bureau credit monitoring through CyEx, and three Settlement Class Members submitted claims for Unreimbursed Economic Losses totaling $5,601.92, which remain under review. *Id*. ¶¶18-19.

This represents a claims rate of 2.46%, which is consistent with, and indeed compares favorably to, analogous class action settlements. *Id*. ¶16. Courts in this Circuit and elsewhere have repeatedly recognized that consumer and data breach settlements often yield single-digit or even sub-one-percent participation rates, yet still warrant approval. *See Jones v. Monsanto Co*., 38 F.4th 693, 698 (8th Cir. 2022) (affirming approval of a class action settlement and explaining that "[t]his court has noted that 'a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness'") (quoting *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017)); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214 (W.D. Mo. 2017) (approving a class action settlement with a claims rate of 0.29% and explaining that "[c]ourts around the country have approved settlements where the claims rate was less than one percent").

The claims rate here is particularly strong when compared to other recent data breach cases. For example, in *Weisenberger v. Ameritas Mut. Holding Co*., the court granted final approval of a data breach class action settlement with a claims rate of approximately 1.25%. No. 4:21-CV-3156, 2024 U.S. Dist. LEXIS 149359, at *7 (D. Neb. Aug. 21, 2024). There, the court explained that

5

"[w]hile low, the claims rate is not unusual for data breach cases like this" and that "[t]he parties did their best to afford class members the opportunity to obtain relief . . . [t]hese efforts satisfy the Federal Rules and due process." *Id*. The claims rate achieved here—nearly ***double*** that in *Weisenberger*—further underscores the fairness and adequacy of this Settlement.

Accordingly, the participation level and distribution of claims strongly support final approval, as they demonstrate that class members not only had a meaningful opportunity to obtain relief, but also that a significant number of them exercised that opportunity and will receive substantial monetary and non-monetary benefits.

### E. Opt-Outs & Objections

The deadline for Settlement Class Members to request exclusion or to object to the Settlement was September 15, 2025. Simpluris Decl. ¶20. As of September 22, 2025, no Settlement Class Members requested exclusion, and no Settlement Class Members filed objections *Id*. ¶¶21, 23.

The complete absence of objections or opt-outs strongly supports final approval. Courts routinely recognize that such unanimous class support is compelling evidence that a settlement is fair, reasonable, and adequate. *See, e.g., Woodard v. Navient Sols., LLC*, No. 8:23CV301, 2024 U.S. Dist. LEXIS 4227, at *16 (D. Neb. Jan. 9, 2024) (noting that the lack of objections "weighs in favor of approval" and reflects class satisfaction with the settlement terms). The fact that over 98% of the class received direct notice and yet not a single member opposed the Settlement underscores its fairness and further demonstrates that the Settlement easily satisfies Rule 23(e).

### IV. LEGAL STANDARD

The "long-standing policy favoring settlements . . . is especially applicable to class action litigation[.]" *Stoneridge Inv. Partners LLC v. Charter Communs., Inc.*, No. 4:02-CV-1186, 2005

6

U.S. Dist. LEXIS 14772, at *14 (E.D. Mo. June 30, 2005); *see also*. *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108, 2009 U.S. Dist. LEXIS 114080, at *12 (E.D. Mo. Dec. 8, 2009) ("Especially in the context of class actions, the federal judiciary has a strong policy of promoting and encouraging settlements between litigating parties."). Under Federal Rule of Civil Procedure 23(e), "class action settlements must be approved by the court before they become effective." *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *12. Approval is proper when "the proposed agreement is 'fair, reasonable, and adequate.'" *Id.* at *13.

At the final approval stage, the court conducts a "fairness hearing" wherein the court finally determines whether or not "the proposed agreement is 'fair, reasonable, and adequate.'" *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *12 (quoting Fed. R. Civ. P. 23(e)(2)). Therein, the court must confirm that the settlement class satisfies Federal Rules of Civil Procedure 23(a) and 23(b)(3). *Pollard*, 320 F.R.D. at 206. When assessing the fairness, reasonableness, and adequacy of the settlement, courts must consider the four factors provided by Rule 23(e)(2). *Weisenberger*, 2024 U.S. Dist. LEXIS 149359, at *5. And in the Eighth Circuit, courts must also consider the four *In re Wireless* factors.[2] *Pollard*, 320 F.R.D. at 218.

V.   **ARGUMENT**

Final approval is proper under Rule 23(a), Rule 23(b)(3), the Rule 23(e)(2) analysis, and the traditional *In re Wireless* factors. As explained below, the Settlement is procedurally and substantively fair, reasonable, and adequate. *Id*. Notably, courts in the Eighth Circuit readily grant approval of analogous data breach class action settlements. *See, e.g., Spearman v. Nelnet*

---

[2] The *In re Wireless* factors are also called the "*Van Horn* factors" and the "*Grunin* factors." *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 932 (8th Cir. 2005) (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) and *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)).

7

*Servicing, LLC*, No. 4:22-CV-3191, 2025 U.S. Dist. LEXIS 61181, at *3 (D. Neb. Mar. 31, 2025) (granting preliminary approval of a data breach settlement); *Weisenberger*, 2024 U.S. Dist. LEXIS 149359, at *13 (granting final approval of a data breach settlement); *Lutz v. Electromed, Inc.*, No. 21-cv-2198, 2023 U.S. Dist. LEXIS 115564, at *1 (D. Minn. July 6, 2023) (same). Here too, the Court should grant final approval.

      A.      **The Settlement Class Satisfies Rule 23(a) and Rule 23(b)(3).**

At the preliminary approval stage, the Court found that the Settlement Class satisfied the requirements of Rule 23(a) and Rule 23(b)(3). *See* Doc. 26, at ¶¶6–7. Since that time, no intervening change in law or fact has occurred that would alter the Court's prior determination. Miller Decl. ¶5. As set forth below, the Settlement Class continues to meet each of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequacy—as well as the Rule 23(b)(3) requirements of predominance and superiority. *Id*. ¶6. Thus, the Court should grant final approval.

***Numerosity***. The Settlement satisfies numerosity because there are 16,014 Settlement Class Members. Simpluris Decl. ¶9. Thus, numerosity is still satisfied because "forty class members is generally sufficient." *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *22.

***Commonality***. The Settlement satisfies commonality because "there are questions of law or fact common to the class." *Wiley v. RugsUSA, LLC*, No. 6:23-cv-03250, 2024 U.S. Dist. LEXIS 77053, at *11 (W.D. Mo. Mar. 7, 2024). Notably, commonality "is typically not difficult for class action plaintiffs to meet[.]" *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *22–23. Here, Plaintiff alleged several common questions of law and fact applicable to all Settlement Class Members, including whether Defendant IBEW owed a duty to use reasonable care in safeguarding members' personal information, whether IBEW failed to implement and maintain reasonable security procedures and practices, and whether the Data Incident resulted in cognizable injuries.

8

See Miller Decl. ¶6. These issues are central to every Class Member's claim and are capable of classwide resolution. Accordingly, the Settlement continues to satisfy the commonality requirement of Rule 23(a)(2).

*Typicality*. The Settlement satisfies typicality because "the class representative's claims or defenses [are] 'typical of the claims or defenses of the class.'" *Wiley*, 2024 U.S. Dist. LEXIS 77053, at *11. Typicality "is fairly easily met, and factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims.'" *Id*. at *11–12 (cleaned up). Here, the claims and defenses of Plaintiff and all Settlement Class Members arise from the same underlying event—the Data Incident—which forms the common factual basis for the litigation and supports a finding of typicality under Rule 23(a)(3). Thus, typicality is still satisfied.

*Adequacy*. The Settlement satisfies adequacy because "1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Wiley*, 2024 U.S. Dist. LEXIS 77053, at *12 (quoting *Holt v. Communityamerica Credit Union*, No. 4:19-CV-00629, 2020 U.S. Dist. LEXIS 260295, at *11 (W.D. Mo. Sep. 4, 2020)). Thus, in *Wiley*, adequacy was satisfied when "Class Counsel are experienced litigators" and "Plaintiffs and Class Counsel have worked competently[.]" *Id*. The Settlement satisfies the adequacy requirement because Class Counsel has extensive experience in data privacy and consumer protection litigation and is currently prosecuting numerous data breach cases nationwide on behalf of millions of affected individuals. See Miller Decl. ¶7. Plaintiff Ralph Leavitt also served as an adequate and engaged class representative—he provided factual information for the complaint, reviewed the pleadings for accuracy, met with Class Counsel to

9

answer questions, assisted in settlement discussions, and remained available throughout the litigation and settlement process. *Id.* ¶8. Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied.

***Predominance***. The Settlement satisfies predominance because "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Wiley*, 2024 U.S. Dist. LEXIS 77053, at *13 (quoting *Holt*, 2020 U.S. Dist. LEXIS 260295, at *11–12). This requirement is "relaxed in the settlement context." *Id.* Here, questions of law or fact common to the Settlement Class predominate—including whether IBEW owed duties, breached its duties, proximately caused the Data Incident, and inflicted cognizable injuries. Thus, predominance is still satisfied.

***Superiority***. The Settlement satisfies superiority because the "individual claims are small and . . . virtually identical[.]" *Wiley*, 2024 U.S. Dist. LEXIS 77053, at *13–14. Likewise, the individual claims of the Settlement Class Members are small and similar. Moreover, individual adjudication for the 16,014 Settlement Class Members would be impracticable. Thus, superiority is still satisfied.

    **B.**    **Final Approval Is Appropriate Under Rule 23(e).**

Previously, the Court held that the Settlement Class was "within the range of possible approval as fair, reasonable, and adequate." Doc. 36, at ¶ 3. As explained below, the Settlement is "fair, reasonable, and adequate" upon consideration of the four factors provided by Rule 23(e)(2).[3] Thus, the Court should grant final approval.

---

[3] Rule 23(e)(2) requires that courts consider "whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

### 1. Class Counsel and Plaintiff Provided Adequate Representation.

The Rule 23(e)(2)(A) factor supports final approval because Class Counsel and the Plaintiff provided adequate representation. This factor focuses on "whether (1) the class representatives have common interests with members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Wiley*, 2024 U.S. Dist. LEXIS 77053, at *3 (quoting *Cleveland v. Whirlpool Corp.*, No. 20-cv-1906, 2022 U.S. Dist. LEXIS 111091, at *13 (D. Minn. June 23, 2022)). For example, in *Wiley*, this factor supported approval when "Class Counsel are accomplished litigators with significant experience in class action litigation . . . and negotiated a meaningful settlement" and "Plaintiffs actively participated in this litigation, and aided Class Counsel in vigorously representing the Class's interests." *Id*. As detailed above, both Class Counsel and Plaintiff Ralph Leavitt provided adequate representation. Miller Decl. ¶¶7-8. Thus, this factor supports approval.

### 2. The Settlement Was Negotiated at Arm's Length.

The Rule 23(e)(2)(B) factor supports final approval because the Settlement was negotiated at arm's length. Courts find this factor satisfied where the parties have engaged in a thorough evaluation of the case, exchanged meaningful information, and ensured that attorneys' fees and service awards were not negotiated until after the substantive terms of relief were established. See *Wiley v. RugsUSA, LLC*, 2024 U.S. Dist. LEXIS 77053, at *5 (W.D. Mo. Mar. 7, 2024).

Here, the Parties exchanged informal discovery that enabled them to assess the strengths and weaknesses of their respective claims and defenses. Miller Decl. ¶10. The negotiations, which

---

including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

11

spanned approximately five months, were professional but adversarial, with both sides vigorously advocating their positions. *Id.* ¶19. Consistent with best practices, the Parties deferred discussion of attorneys' fees and the service award until after reaching agreement on the core settlement terms for the Class. *Id.* ¶20.

These circumstances confirm that the Settlement was negotiated in good faith and without collusion, further supporting final approval.

### 3. The Settlement Provides Adequate Relief.

The Rule 23(e)(2)(C) factor supports final approval because the Settlement provides adequate relief. As explained below, this factor includes four separate subfactors for the court to "tak[e] into account." Rule 23(e)(2)(C). Here, three of these subfactors support final approval (and one subfactor is neutral).

***First***, the Settlement is adequate "taking into account . . . the costs, risks, and delay of trial and appeal[.]" Rule 23(e)(2)(C)(i). In data breach cases such as this, plaintiffs face substantial risks in prevailing on the merits, including challenges in establishing causation, as well as significant risks at the class certification, trial, and appellate stages. Resolving the case now through settlement avoids those uncertainties and provides meaningful benefits to Settlement Class Members without the delay, expense, and risk associated with continued litigation.

***Second***, the Settlement is adequate "taking into account . . . the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[.]" Rule 23(e)(2)(C)(ii). Here, the relief is tailored to the specific injuries that Settlement Class Members incurred (i.e., compensation for Unreimbursed Economic Losses, the *Pro Rata* Cash Payment, and two-years of three-bureau Credit Monitoring through CyEx). S.A. ¶61. Such tailored relief is "effective and aligns with the relief provided by analogous data breach

class action settlements." *See Wiley*, 2024 U.S. Dist. LEXIS 77053, at *7-8 (stating that "the Settlement provides for a streamlined method of distributing relief . . . if they so choose, Class Members can easily file a claim for a cash benefit").

***Third***, the Settlement is adequate "taking into account . . . the terms of any proposed award of attorney's fees[.]" Rule 23(e)(2)(C)(iii). Here, Class Counsel requested 33.33% of the Settlement Fund which is reasonable—especially because Class Counsel undertook this case on a wholly contingent basis which posed the substantial risk of zero recovery.

***Fourth***, Rule 23(e)(2)(C)(iv) is neutral toward final approval because there is no agreement that requires identification. *see Wiley*, 2024 U.S. Dist. LEXIS 77053, at *8 (noting that "there are no agreements that need to be identified").

### 4. The Settlement Treats Class Members Equitably.

The Rule 23(e)(2)(D) factor supports final approval because the Settlement treats Class Members equitably. For example, in *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, the court granted preliminary approval of a data breach settlement that provided compensation for out-of-pocket losses or an alternative cash payment. No. 18-cv-8472, 2022 U.S. Dist. LEXIS 102805, at *28 (S.D.N.Y. June 8, 2022). Therein, the court held that "[t]he plan of allocation compensates members of the class equitably relative to each other." *Id*. Likewise, this Settlement treats Class Members equitably—after all, the Settlement provides compensation for Unreimbursed Economic Losses and the *Pro Rata* Cash Payment. Finally, the service award of $5,000 is appropriate under Eighth Circuit precedent. *Levine Hat Co. v. Innate Intel., LLC*, No. 4:16-cv-01132, 2022 U.S. Dist. LEXIS 254347, at *3 (E.D. Mo. May 11, 2022) (approving a $5,000 service award). Thus, this factor supports final approval.

### C. Final Approval Is Appropriate Under the *In re Wireless* Factors.

In the Eighth Circuit, courts apply the four *In re Wireless* factors when evaluating the fairness, reasonableness, and adequacy of a class settlement. *Baker v. City of Florissant*, No. 4:16-CV-1693, 2024 U.S. Dist. LEXIS 2769, at *4 (E.D. Mo. Jan. 2, 2024) (citing *In re Wireless*, 396 F.3d at 932). The four factors are: "(1) the merits of the plaintiffs' case weighed against the terms of the settlement; (2) the defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Wiley*, 2024 U.S. Dist. LEXIS 77053, at *9. As explained below, all four factors support final approval.

#### 1. The Merits Weighed Against the Settlement.

The first *In re Wireless* factor is "the merits of the plaintiffs' case weighed against the terms of the settlement[.]" *Wiley*, 2024 U.S. Dist. LEXIS 77053, at *9. For example, in *Wiley*, this factor supported approval because "continued litigation would present substantial risk, expense, and delay, and Class Counsel has negotiated a significant settlement[.]" *Id.* Similarly, continued litigation would present substantial risk, as establishing causation and liability in data breach class actions is inherently complex and uncertain. See *In re Onix Grp., LLC Data Breach Litig.*, No. 23-2288, 2024 U.S. Dist. LEXIS 225686, *27 (E.D. Pa. Dec. 13, 2024) ("[T]here is a risk of establishing liability, and in turn, damages, because this case involves a number of open questions, including whether Defendant owed a duty to the class to safeguard sensitive information, whether Defendant breached that duty . . . whether Defendant's conduct was the proximate cause[.]"). Thus, this factor supports final approval.

#### 2. Defendant's Financial Condition.

The second *In re Wireless* factor is "defendants' financial condition[.]" *Wiley*, 2024 U.S. Dist. LEXIS 77053, at *9. For example, in *Wiley*, this factor supported approval when "Defendant

14

has agreed to, and has represented to Class Counsel that it can, pay for the Settlement[.]"*Id.* Likewise, IBEW can pay—and has agreed to pay—for the relief provided by the Settlement. Miller Decl. ¶12. Thus, this factor supports final approval.

### 3. The Complexity and Expense of Further Litigation.

The third *In re Wireless* factor is "the complexity and expense of further litigation[.]" *Wiley*, 2024 U.S. Dist. LEXIS 77053, at *9. For example, in *Wiley*, this factor supported approval because "continued litigation would present substantial risk, expense, and delay, and Class Counsel has negotiated a significant settlement[.]" *Id.* Similarly, "data breach litigation is complex and largely undeveloped[.]" *In re Canon United States Data Breach Litig.*, No. 20-CV-6239, 2024 U.S. Dist. LEXIS 138499, *30 (E.D.N.Y. Aug. 5, 2024). Indeed, "no data breach class action has reached the trial stage[.]" *Id*. Thus, this factor supports final approval.

### 4. The Amount of Opposition to the Settlement.

The fourth *In re Wireless* factor strongly supports final approval because the deadline for Settlement Class Members to opt-out (i.e., exclude themselves) or object to the Settlement was September 15, 2025. Simpluris Decl. ¶¶22 and 23. In total, zero (0) Settlement Class Members opted-out of the Settlement, and zero (0) Settlement Class Members objected to the Settlement. *Id*. ¶¶21 and 23; *see also Woodard v. Navient Sols., LLC*, No. 8:23CV301, 2024 U.S. Dist. LEXIS 4227, at *16 (D. Neb. Jan. 9, 2024) ("[T]he lack of opposition to the settlement weighs in favor of approval. Notably, there are no objections to the terms of the settlement from . . . any of the approximately 11,000 class members. Only four individuals attempted to opt out of the settlement, none of whom seem to particularly object to the terms of the agreement itself. Such apparent satisfaction is especially exceptional given the size of this class."). Thus, this factor strongly supports final approval.

15

### D. The Notice Program Satisfied Rule 23(e) and Due Process.

The Court should approve the Notice Program, which was successful and provided direct notice to 98.38% of the Settlement Class. Simpluris Decl. ¶14. Thus, the Notice Program met—and even exceeded—the requirements of Rule 23(e) and due process. *See, e.g., Allicks v. Omni Specialty Packaging*, No. 4:19-cv-1038, 2020 U.S. Dist. LEXIS 173964, at *14 (W.D. Mo. Sep. 22, 2020) ("It is reasonable to expect an effective notice campaign to reach between seventy and ninety-five percent of a class."); *Feldman v. Star Trib. Media Co. LLC*, No. 22-cv-1731, 2024 U.S. Dist. LEXIS 106591, at *19 (D. Minn. June 17, 2024) ("Approximately 78% of class members were reached, which is considered a 'high percentage,' consistent with Federal Judicial Center guidelines."). Moreover, as evidenced by the Simpluris Declaration (and the attached Exhibits B, C, D, and E), the notice program provided Settlement Class Members with all the information required by due process, Rule 23(e), and the Court's Preliminary Approval Order. Thus, the Notice Program was sufficient; and the Court should grant final approval.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval, finally certify the Settlement Class for purposes of settlement, and enter the proposed final approval order.

Dated: October 6, 2025                         Respectfully submitted,

                                                             By: */s/ Cassandra P. Miller*
                                                                 Cassandra P. Miller (*Pro Hac Vice*)
                                                                 STRAUSS BORRELLI PLLC
                                                                 One Magnificent Mile
                                                                 980 N. Michigan Avenue, Suite 1610
                                                                 Chicago, IL 60611
                                                                 Telephone: (872) 263-1100
                                                                 Facsimile: (872) 263-1109

cmiller@straussborrelli.com

*Attorney for Plaintiff and the Settlement Class*

## **CERTIFICATE OF SERVICE**

I, Cassandra P. Miller, hereby certify that on October 6, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, via the ECF system.

DATED this 6th day of October, 2025.

        STRAUSS BORRELLI PLLC

    By: */s/ Cassandra P. Miller*
        Cassandra P. Miller
        STRAUSS BORRELLI PLLC
        One Magnificent Mile
        980 N. Michigan Avenue, Suite 1610
        Chicago, IL 60611
        Telephone: (872) 263-1100
        Facsimile: (872) 263-1109
        cmiller@straussborrelli.com